UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NIKKI MCBETH,

        Plaintiff,                                   CV 04-349-JE

        v.                                          OPINION AND ORDER

JO ANNE B. BARNHART,
Commissioner of Social Security
Administration,

        Defendant.
_____

David B. Lowry
9900 S.W. Greenburg Road
Columbia Business Center, Suite 235
Portland, OR 97223
        Attorney for Plaintiff

Karin J. Immergut
United States Attorney
Craig J. Casey
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204

Lucille G. Meis
Social Security Administration
Office of the General Counsel
701 Fifth Avenue
Suite 2900, M/S 901
Seattle, WA 98104

David J. Burdett
Special Assistant United States Attorney
701 Fifth Avenue
Suite 2900 M/S 901
Seattle, WA 98104
    Attorneys for Defendant

HAGGERTY, Chief Judge:

On March 9, 2004, plaintiff filed a Complaint seeking judicial review of the Commissioner's final decision denying her application for disability insurance benefits (DIB) and supplemental security income benefits (SSI). On May 18, 2005, Magistrate Judge Jelderks issued a Findings and Recommendation (Doc. #17), recommending that the Commissioner's decision be affirmed. Plaintiff filed objections to the Findings and Recommendation. Defendant did not file a response to plaintiff's objections. The matter is now before the court pursuant to 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b).

When a party objects to any portion of a Magistrate Judge's Findings and Recommendation, the district court must make a *de novo* determination of that portion of the Magistrate Judge's report. 28 U.S.C. § 636(b)(1)(B); *McDonnell Douglas Corp. v. Commodore Bus. Mach. Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981). The court has given this case a *de novo* review and adopts the Findings and Recommendation. For the reasons provided below, the Commissioner's decision is affirmed.

## **DISCUSSION**

Plaintiff asserts the following objections to the Magistrate Judge's Findings and Recommendation: (1) plaintiff was deprived of her due process right to have an impartial administrative law judge (ALJ) assess her disability; (2) the ALJ and the Magistrate Judge gave too much weight to the fact that plaintiff's counsel would not conclusively state whether he had submitted all relevant evidence; (3) the ALJ erred by improperly rejecting the opinions of treating and examining physicians; (4) the ALJ improperly evaluated plaintiff's residual functional capacity (RFC) and ability to perform other work; (5) the ALJ's hypothetical to the vocational expert (VE) was inadequate and the VE failed to provide a foundation for his testimony regarding the numbers of available jobs plaintiff was capable of performing; and (6) the ALJ improperly rejected statements by lay witnesses.

At the outset, the court emphasizes that it is the duty of the ALJ to determine credibility, resolve conflicts in the evidence, and assess ambiguities. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). In this case, the ALJ's decision turns in large part on his determination that plaintiff was not credible, and this determination is amply supported by the record. For example, plaintiff's medical report from her hospitalization from April 24 - May 1, 1998, states:

> [Plaintiff] is, however, consciously, making a very clear and concerted effort to exaggerate her symptoms. She is presenting herself and reporting extreme disturbance, quite unrealistic and in excess of her condition. Though tests for plaintiff malingering were negative. It is clear that the patient is making a conscious effort to overstate her distress. It is possible that there may be some possible secondary gain involved.

AR 564.

Another example is found in the report of James O. Nelson, M.D., who examined plaintiff upon referral from the agency in February 1999. Dr. Nelson reported that, although she met eleven of the eighteen trigger point criteria for fibromyalgia, he felt that "the patient

3 – OPINION AND ORDER

seemed to have more than those trigger points and, in fact, hyper-exaggerated pain responses throughout. I would be apprehensive about formally giving her the diagnosis of fibromyalgia." AR 710.

The record also indicates that plaintiff has been grossly inconsistent and untruthful regarding her use of drugs and alcohol. A report by Polk County Mental Health (PCMH) dated November 1, 1998, indicates that plaintiff had used marijuana that morning and consumed two beers the night before. Plaintiff reported to PCMH that she drinks several times per week, consuming from one to eight beers or more per episode, depending on how she is feeling. Plaintiff also reported using marijuana on a daily basis. AR 696. However, on January 5, 1999, plaintiff reported to Paul S. Stolzfus, Psy.D., that she had quit using illicit drugs seven years previously, although she later acknowledged that she still had "drinking episodes." AR 703. Dr. Stolzfus' report also indicates that plaintiff "denied a pattern and stated she only drinks when the stress is no longer bearable. She insisted her most recent intoxication was in 1996." AR 703.

Because of these types of inconsistencies, as well as many more examples of plaintiff's tendency for being untruthful, the ALJ's finding that plaintiff is not credible is supported by substantial evidence in the record. Furthermore, plaintiff's lack of credibility served to undermine much of the evidence in this case. With this important point in mind, the court now addresses each of plaintiff's objections.

1. ALJ's alleged bias and plaintiff's right to due process

Plaintiff argues that she was deprived of her due process right to have an impartial ALJ assess her disability because the ALJ was biased against her attorney, David Lowry (Lowry). Due process demands impartiality on the part of an ALJ. *Schweiker v. McClure*, 456 U.S. 188, 195 (1982). We start with a presumption that ALJs are unbiased. *Id.*; *see*

4 – OPINION AND ORDER

*also Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999). This presumption can be rebutted by a showing of bias, a conflict of interest, or some other specific reason for disqualification. *Id.* The burden of establishing a disqualifying basis rests with the party making the assertion. *Id.*

In *Liteky v. United States*, 510 U.S. 540 (1994), the Supreme Court held that in order to establish bias there must be evidence of "a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* at 555. The Court explained that "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Id.*

Here, plaintiff's argument that the ALJ was biased is based, in part, on the ALJ's statement that, "[t]his case has been unnecessarily complicated and prolonged due to the deliberate obfuscation and tactics by claimant's counsel discussed throughout this decision." AR 19. Indeed, there are multiple statements throughout the decision in which the ALJ expresses dissatisfaction with Lowry's actions related to this case. Plaintiff argues that the situation here is similar to that in *Ventura v. Shalala*, 55 F.3d 900, 902 (3rd Cir. 1995), where the Third Circuit explained that the right to an unbiased ALJ is particularly important because of an ALJ's "duty to develop a full and fair record in social security cases."

While it is clear that the ALJ was frustrated by the behavior of plaintiff's counsel, it is also clear to this court that the ALJ was committed to conducting a full and fair analysis of plaintiff's claims. The ALJ stated that he spent "an inordinate amount of time . . . carefully reading and analyzing the reliable medical evidence of record and sorting through ceaseless irrelevant submissions." AR 19. The fact that the ALJ did so is evident from the

decision. The court finds that the ALJ did not show the level of antagonism that would make fair judgment impossible; quite the opposite, it appears that the ALJ engaged in a particularly close and careful analysis of the evidence in this case.

2. ALJ's concern regarding submission of all relevant evidence

Plaintiff argues that "the ALJ erred by becoming too emotional about extraneous issues." Pl.'s Objections to Magistrate Judge's Findings and Recommendations at 7 (Pl.'s Objections). Specifically, plaintiff contends that the ALJ gave too much weight to the fact that Lowry refused to affirmatively state whether he had submitted all relevant medical evidence into the record. The court need not determine whether Lowry or the ALJ was correct as to the legal standard for submitting medical evidence on behalf of an applicant for DIB and SSI benefits, because even assuming for the purposes of this Order that Lowry was correct, the court finds that this issue did not have a material impact upon the ALJ's decision. Lowry does not argue that he was forced to submit evidence he would not otherwise have submitted, and the ALJ's decision is supported by substantial evidence without regard to any possible "missing" evidence.

3. ALJ's rejection of treating and examining physicians' opinions

Plaintiff argues that the ALJ erred by improperly rejecting the opinions of her treating and examining physicians. Plaintiff contends that the ALJ failed to examine the medical evidence according to the factors set forth in 20 C.F.R. §§ 404.1527(d)(1)-(6), 416.927(d)(1)-(6). Plaintiff also contends that, instead of rejecting certain medical opinions, the ALJ was required to recontact the physicians to gain clarification of their opinions pursuant to SSR 96-5p.

In his Findings and Recommendation, Magistrate Judge Jelderks engaged in a

6 – OPINION AND ORDER

thorough examination of the medical evidence in this case, which will not be repeated here. The court has thoroughly reviewed the ALJ's treatment of the medical evidence, as well as the Magistrate Judge's findings and plaintiff's objections to those findings. It is clear to the court that the ALJ went out of his way to fully develop the record, analyze the evidence, and thoroughly document his findings and reasoning.

An ALJ is required to weigh the evidence as follows: (1) give more weight to an examining source; (2) give more weight to a treating source, taking into account the length and nature of the relationship: (3) give more weight to a medical opinion that is supported by relevant evidence, such as medical signs and laboratory finds, and that includes explanations for the opinion; (4) give more weight to medical opinions that are consistent with the record as a whole; (5) give more weight to the opinion of a specialist; (6) consider other factors, such as the extent to which the medical source is familiar with the other information in the case record. 20 C.F.R. §§ 404.1527(d)(1)-(6), 416.927(d)(1)-(6).

Here, the ALJ extensively analyzed the medical evidence in the record according to these factors. The ALJ found that many of the medical opinions were entitled to little evidentiary weight because, for example, they were not supported by relevant evidence (see the ALJ's rejection of Dr. Volkmann's opinion, AR 46), they were not consistent with the record as a whole (see the ALJ's rejection of Dr. Edwardson's opinion, AR 40), or the physician was not familiar with plaintiff's medical history or other evidence in the record (see the ALJ's rejection of Dr. Gibby-Smith's opinion, AR 41).

Plaintiff argues that this case is similar to *LaPierre v. Callahan*, 982 F. Supp 789, 792 (W.D. Wash. 1997), where the court found that the ALJ's analysis persistently and impermissibly discounted any testimony that was favorable to plaintiff. Unlike in *LaPierre*,

7 – OPINION AND ORDER

however, there is substantial evidence in this record supporting the ALJ's treatment of the medical sources. As described above, the ALJ's finding that plaintiff lacked credibility is supported by ample evidence in the record, and the ALJ rejected much of the medical evidence based, at least in part, on the plaintiff's many inconsistent statements to her medical providers. Furthermore, as thoroughly explained by the ALJ and Magistrate Judge Jelderks, the record contains very little objective medical evidence entitled to evidentiary weight that supports plaintiff's alleged limitations.

Plaintiff also argues that the ALJ's decision to reject the opinion of Dr. Christopher Edwardson due to an absence of "objective evidence" was error because there is no objective evidence of fibromyalgia. Plaintiff mischaracterizes the bases on which the ALJ rejected Dr. Edwardson's opinions. In fact, the ALJ's decision states: "Dr. Edwardson reported a diagnosis of fibromyalgia based upon positive trigger point tenderness, but he noted that all other physical findings were within normal limits." AR 39-40. The ALJ then provided several reasons why Dr. Edwardson's opinions were entitled to little evidentiary weight, including that: (1) his findings about plaintiff's vocational capacity were outside his area of medical expertise; (2) his opinions were supported only by "benign clinical findings documented in his infrequent records of outpatient treatment"; (3) his opinions were contradicted by the evidence submitted by Dr. Ferguson, Dr. May, Dr. Davidson, Dr. Nelson, and the DDS medical consultants of record; and (4) his records failed "to document any contemporaneous references to disabling physical signs, symptoms, or functional limitations during the course of his actual treatment of the claimant." AR 40. It is clear to the court that, contrary to plaintiff's argument, the ALJ did not reject Dr. Edwardson's opinions merely due to the absence of objective evidence supporting it.

Plaintiff also argues that it was improper for the ALJ to accept the opinions of nonexamining psychologist Susan L. Dragovich, Ph.D., because the ALJ failed to apply the factors in 20 C.F.R. §§ 404.1527(d)(1)-(6), 416.927(d)(1)-(6) and because Dr. Dragovich had not reviewed a note provided by Dr. Gibby-Smith in 2002 describing plaintiff's worsening condition. The court finds no support for plaintiff's argument. First, Dr. Dragovich testified as a medical expert at the hearing on November 28, 2001, based on her review of plaintiff's medical records at that time. The ALJ properly weighed this evidence under the regulations. Second, the ALJ provided a detailed explanation in his decision as to why the letter provided by Dr. Gibby-Smith in 2002 was not sufficient to rebut Dr. Dragovich's testimony. As Magistrate Judge Jelderks thoroughly explained in his Findings and Recommendation, the ALJ provided sufficient reasons, supported by substantial evidence in the record, for rejecting Dr. Gibby-Smith's medical opinions.

4. ALJ's evaluation of plaintiff's RFC

Plaintiff argues that the ALJ improperly evaluated her RFC and ability to perform other work. Specifically, plaintiff contends that the ALJ failed to: (1) evaluate plaintiff's ability to work on a regular and continuing basis; (2) consider all of plaintiff's medical limitations and all of the medical opinions; (3) conduct a function-by-function assessment explaining the rationale for each of her RFC findings; (4) consider and address medical source opinions; and (5) examine the effects of plaintiff's diagnosed mental impairments.

In his Findings and Recommendation, Magistrate Judge Jelderks explained that the ALJ was required only to assess alleged limitations that were supported by the evidence in the record. In other words, if the ALJ found that a limitation alleged by plaintiff was not actually present, the ALJ did not have a duty to include that limitation in his RFC.

9 – OPINION AND ORDER

Furthermore, as the Magistrate Judge found, the ALJ properly rejected plaintiff's testimony and several medical source opinions, and, largely based on this, discredited most of plaintiff's alleged functional limitations.

Nonetheless, plaintiff argues that the ALJ erred under SSR 96-8p by failing to assess whether plaintiff could engage in sustained work activity and by failing to conduct a function-by-function assessment of her limitations and abilities. Plaintiff cites to *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998), where the court stated: "When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis." (quoting 20 C.F.R. § 404.1545(b)). The *Reddick* court found that the ALJ's RFC was not supported by substantial evidence because it failed to account for the effects of fatigue on the plaintiff's ability to function in the workplace. *Id.* at 724-25.

The court finds no support for plaintiff's argument that the ALJ failed to consider whether plaintiff could engage in sustained work activity. Unlike in *Reddick*, here, the ALJ conducted a thorough and comprehensive analysis of the medical evidence and relevant testimony and found that plaintiff had very few functional limitations. Plaintiff's RFC was based on the ALJ's lengthy and thorough examination of the evidence, from which he found that plaintiff retained the physical capacity to engage "in a full range of light exertional activity" and the mental capacity to perform work that does not require detailed or complex instructions, maintaining attention or concentration for extended periods, performing tasks as an integral member of a work crew, or more than intermittent contact with the general public. AR 34. The ALJ's findings are supported by substantial evidence and there is no evidence that he omitted any established limitations from his RFC analysis. Moreover, the

court is satisfied that, as required, the ALJ properly examined the evidence in order to determine plaintiff's RFC for work activity on a regular and continuing basis.

5.  ALJ's hypothetical question to the VE

Plaintiff argues that the ALJ's hypothetical question to the VE failed to contain all of plaintiff's limitations and was based on a deficient RFC assessment. As stated above and as carefully explained by Magistrate Judge Jelderks, the ALJ's analysis of the evidence was free of legal error and his findings regarding plaintiff's limitations and her RFC are supported by substantial evidence in the record. Therefore, the ALJ's hypothetical to the VE was proper, and the VE's testimony constituted the substantial evidence necessary to sustain a finding based upon it.

Plaintiff also argues that the ALJ's findings at step five were flawed because the VE failed to provide any foundation for his testimony about the numbers of available jobs that plaintiff is capable of performing. As the Magistrate Judge explained, this court has consistently rejected plaintiff's argument that the Federal Rules of Evidence apply to administrative hearings before an ALJ. Nonetheless, plaintiff also objects to the fact that the Magistrate Judge failed to specifically address *Haddock v. Apfel*, 196 F.3d 1084 (10th Cir. 1999).

In *Haddock*, the VE testified that there were four jobs which the plaintiff could do, but he did not indicate what source he used in making this determination. *Id.* at 1087. The ALJ relied on the VE's testimony to find the plaintiff not disabled. *Id.* On appeal, the plaintiff argued that the description of the four jobs described by the VE, as found in the Dictionary of Occupational Titles (DOT), did not comport with the plaintiff's RFC. *Id.* at 1087-88. The Tenth Circuit held that the ALJ's finding of no disability could not be

11 – OPINION AND ORDER

sustained in light of this contradiction, and the court explained that part of an ALJ's duty to fully develop the record includes "[q]uestioning a [VE] about the source of his opinion and any deviations from a publication recognized as authoritative by the agency's own regulations . . . ." *Id* at 1091. The *Haddock* court held "that the ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Id.*

Thus, *Haddock* was a case in which the court considered a VE's ability to rely on vocational data that was *not* taken from the DOT. Here, as Magistrate Judge Jelderks explained, the jobs the VE identified were from the DOT. Therefore, *Haddock* is simply inapplicable. Furthermore, the court in *Haddock* stated specifically that the DOT is an authorized source which an ALJ may properly rely upon. *Id.* at 1090 (citing 20 C.F.R. § 404.1566(d)(1)). The court finds that the VE appropriately relied on the DOT and, therefore, it was not error for the ALJ to accept the VE's testimony.

6. ALJ's rejection of lay witnesses' testimony

Plaintiff argues that the ALJ improperly rejected the lay witnesses' testimony, but she raises no new arguments in response to Magistrate Judge Jelderks' analysis of this issue. This court has conducted a *de novo* review of the ALJ's treatment of the lay witnesses' testimony and agrees with the Magistrate Judge that the ALJ provided legally sufficient reasons for rejecting it.

///

**CONCLUSION**

For the foregoing reasons, the court adopts the Magistrate Judge's Findings and

12 – OPINION AND ORDER

Recommendation (Doc. #17) in its entirety. The findings of the Commissioner are based on the correct legal standards and are supported by substantial evidence. The final decision of the Commissioner denying plaintiff's application for DIB and SSI benefits is AFFIRMED.

IT IS SO ORDERED.

DATED this __15___ day of August, 2005.

    __/s/Michael M. Mosman for _____
    Ancer L. Haggerty
    United States District Judge